UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00321-FDW
(3:92-cr-00238-FDW-1)

| | |
|---|---|
| KAREEM ABDUL TOMLIN, a/k/a Kareem Abdul Tomblin, ) ) ) Petitioner, ) ) vs. ) ) UNITED STATES OF AMERICA, ) ) Respondent. ) ) | ORDER |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1][1] and the Government's Unopposed Motion for Leave to File a Surreply [CV Doc. 20].

**I.    BACKGROUND**

Petitioner Kareem Abdul Tomlin[2] ("Petitioner") was second in command of "The Posse," a group that distributed base and heroin in Charlotte, North Carolina. [CR Doc. 42 at ¶¶ 16-17: Presentence Investigation Report (PSR)]. The Posse also used firearms to steal illegal drugs and money from other drug dealers, assault and kill rival drug dealers, kidnap people to extort illegal drugs and money from other drug dealers, and protect the organization's drugs and money. [CR

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:16-cv-00321-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:92-cr-00238-FDW-1.

[2] Petitioner's last name is listed as "Tomlin" in his § 2255 Motion to Vacate and is currently captioned as such in this matter. Petitioner's name appeared as "Tomblin" in his underlying criminal proceedings. The Court will direct the Clerk to update the docket in this matter to reflect both names.

Id. at ¶ 16]. On June 11, 1992, Darmika Gray offered to sell cocaine base to Petitioner, Michael Rozelle, and Ronald Bowman. [Id. at ¶ 19]. Rozelle and Bowman were also members of The Posse. [Id.]. The men told Gray they would consider her offer and return later that day. [Id.]. The men then made plans to rob Gray and kill her. [Id.]. When the men returned to Gray's house, she answered the door holding her seven-month-old daughter. [Id.]. Petitioner and the other two men entered Gray's home under the pretense of buying the cocaine base. [Id.]. Rozelle then shot Gray in the back of the head. The men took the cocaine base and left Gray dead with her baby unattended. [Id.]. Petitioner also participated in other home invasion robberies as well as a kidnaping for ransom. [Id. at ¶¶ 18, 20-25]. At the time of these offenses, Petitioner was under the age of 18. [Id. at ¶ 1].

Petitioner was charged in a Bill of Information with one count of conspiracy to possess with intent to distribute cocaine base and heroin (Count 1); one count of conspiracy to commit violent crimes in aid of racketeering (Count 2); three counts of murder in aid of racketeering (violent crime in aid of racketeering (VICAR)) and aiding and abetting the same (Counts 9, 13, 16); one count of kidnaping in aid of racketeering and aiding abetting the same (Count 25); four counts of assault with a dangerous weapon and aiding and abetting the same (Counts 3, 6, 19, 22); eight counts of using and carrying a firearm during a crime of violence and aiding and abetting the same (Counts 4, 7, 10, 14, 17, 20, 23, 26); and nine counts of possession of a firearm during a drug-trafficking crime and aiding and abetting the same (Counts 5, 8, 11, 12, 15, 18, 21, 24, 27). [CR Doc. 3-1: Bill of Information]. Count 9 charged specifically as follows:

> The Grand Jury alleges and incorporates by reference herein paragraphs 1 and 2 of Count Two of this indictment.[3]

---

[3] Paragraphs 1 and 2 of Count 2 relate to the timing, purpose, and general conduct of the enterprise, The Posse. [CR Doc. 3-1 at 1-2].

2

> On or about June 11, 1992, in Charlotte, Mecklenburg County, within the Western District of North Carolina, [Petitioner], as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in the enterprise, that is, the "Posse," which was engaged in racketeering activity, as set forth in paragraphs 1 and 2 of Count Two, **did unlawfully and knowingly murder Darmika Gray, and did aid and bet others in said murder, in violation of the laws of North Carolina, all in violation of Title 18, United States Code, Section 1959(a)(1) and 2**.

[CR Doc. 3-1 at 5 (emphasis added)]. Count 10 alleged as follows:

> On or about June 11, 1992, in Charlotte, Mecklenburg County, within the Western District of North Carolina, [Petitioner], did use and carry a firearm, and did aid and abet others known and unknown to the United States Attorney in the use and carrying of a firearm, **during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely murder in aid of racketeering activity in violation of Title 18, United States Code, Section 1959(a)(1)**, all in violation of Title 18, United States Code, Sections 924(c) and 2.

[Id. (emphasis added)].

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Counts 1, 2, 3, 9, 10, 13, 16, 22, and 25 and the Government agreed to dismiss the remaining counts. [CR Doc. 3 at ¶ 4: Plea Agreement]. Petitioner agreed to be prosecuted as an adult and waived his right to appeal his sentence. He also agreed "not to contest either the conviction or the sentence in any post-conviction proceeding, except with respect to claims of ineffective assistance of counsel." [Id. at ¶ 10]. At Petitioner's Rule 11 hearing, he testified that he understood that he was waiving his right to appeal his conviction and sentence and to contest his conviction or sentence in any post-conviction proceeding. [CR Doc. 3-4 at 22: Plea Tr.].

Petitioner was sentenced on November 16, 1993. [CR Doc. 3-3 at 1: Sentencing Tr.]. He was sentenced to a term of imprisonment of 480 months on Count 1; 36 months on Count 2; 240

3

months on each of Counts 3 and 22; and 480 months on each of Counts 9, 16, and 25; all to be served concurrently to each other and to the term imposed on Count One; and a term of imprisonment of 60 months on Count 10, to be served consecutively to all other counts, for a total term of imprisonment of 540 months.  [CR Doc. 3-3 at 15-16].  Judgment on Petitioner's conviction was entered the same day.  [See CR Doc. 31].  Nearly 13 years later Petitioner sought to appeal his sentence.  [CR Doc. 4: Notice of Appeal].  The Fourth Circuit dismissed Petitioner's appeal as untimely.  [CR Doc. 10].

On July 16, 2012, the Court reduced Petitioner's concurrent term of imprisonment of 480 months to 360 months pursuant to 18 U.S.C. § 3582(c)(2).  [CR Doc. 31].  The consecutive 60-month sentence for Count 10, however, remained unchanged.  [Id.].  On August 3, 2012, Petitioner filed a "motion for modification of sentence," [CR Doc. 32], which the Court dismissed as an untimely motion to vacate under § 2255, [CR Doc. 33].  On February 8, 2013, Petitioner filed a motion for sentence reduction pursuant to Amendment 768 based on his post rehabilitative efforts.  [CR Doc. 36].  The Court granted Petitioner's motion and reduced his aggregate sentence to 380 months, which included the mandatory consecutive sentence for Count Ten.  [CR Doc. 39].

On July 16, 2015, Petitioner filed a second motion to vacate pursuant to § 2255, which the Court dismissed as successive.  [CR Docs. 41, 43].  On May 17, 2016, Petitioner filed a third § 2255 motion, which the Court again dismissed as successive.  [CR Docs. 43, 47].  Then, on May 27, 2016, Petitioner, proceeding pro se, filed a fourth § 2255 motion, "in light of the recent Supreme Court Ruling in Johnson made retroactively applicable to cases on Collateral Review in that, it struck down certain 'Crimes of Violence' as Unconstitutional."  [CR Doc. 53].  Just over two weeks later, on June 13, 2016, the Federal Defenders of Western North Carolina filed a § 2255 motion on Petitioner's behalf.  [CR Doc. 49; CV Doc. 1].  Petitioner argues that his 18 U.S.C. §

4

924(c) conviction is invalid under Johnson v. United States, 135 S.Ct. 2551 (2015).[4] Petitioner sought and obtained authorization from the Fourth Circuit to file a second or successive 28 U.S.C. § 2255 motion to raise the new rule of constitutional law announced in Johnson. [CV Doc. 3]. For relief, Petitioner seeks that his § 924(c) conviction be vacated. [CV Doc. 1 at 11]. This motion is pending before the Court now. The Court granted the Government's motion to stay the matter pending decisions by the Fourth Circuit Court of Appeals in United States v. Ali, 15-4433, and United States v. Simms, No. 15-4640. [CV Doc. 5; 11/18/2018 Text Order]. Then, on March 27, 2019, the Court granted the Government's motion to stay pending the Supreme Court's decision in United States v. Davis. No. 18-431. [CV Docs. 6, 7]. Davis, 139 S. Ct. 2319 (2019), was decided in June 2019.

Thereafter, Petitioner supplemented his motion to vacate in light of Davis.[5] [Doc. 10]. The Government responded, arguing that Petitioner waived his right to contest his conviction in his plea agreement, that he is procedurally barred from raising this issue, and that murder in aid of racketeering is a crime of violence. [CV Doc. 12]. Then, on November 25, 2019, the Court granted Petitioner's motion to stay pending the Supreme Court's decision in Walker v. United States, No.

---

[4] In Johnson, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague and held that enhancing a sentence under the ACCA's residual clause violates due process. Id. at 2563. The ACCA residual clause defined a "violent felony" to include any crime punishable by a term of imprisonment exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Accordingly, under Johnson, a defendant who was sentenced to a statutory mandatory minimum term of imprisonment based on a prior conviction that satisfies only the residual clause of the "violent felony" definition is entitled to relief from his sentence. The Supreme Court has held that Johnson applies retroactively to claims asserted on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

[5] Petitioner also argues, for the first time, that "this Court must assume that [Petitioner's] § 924(c) conviction was predicated on *conspiracy* to commit murder in aid of racketeering," [Doc. 10 at 7], and not murder in aid of racketeering, [see Doc. 1 at 3-4]. There is, however, no ambiguity in the charging document in this case. [See CR Doc. 3-1 at 5]. The § 924(c) predicate crime of violence was murder in aid of racketeering and the Court proceeds here accordingly.

5

19-373. [CV Docs. 14, 15]. After Walker was decided, the Court stayed the matter pending the Supreme Court's decision in Borden v. United States, No. 19-5410. [Doc. 18]. On June 10, 2021, the Supreme Court decided Borden. Thereafter, Petitioner filed a reply to the Government's response to Petitioner's § 2255 motion and an alternative petition for writ of error coram nobis.[6] [CV Doc. 19]. Petitioner maintains his arguments under Davis and Johnson and further argues, under Borden, that the murder predicate cannot qualify as a crime of violence under § 924(c)'s force clause. [Id.]. In response, the Government filed an unopposed surreply, further elucidating its argument that murder in aid of racketeering is a crime of violence, even after Borden.[7] [CV Doc. 21].

And now, finally, this matter is ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

---

[6] Petitioner was released from prison on November 8, 2019. He has filed a motion seeking early termination of supervised release in his criminal proceeding, which remains pending. [CR Doc. 59]. Because Petitioner's petition for writ of coram nobis is made in the alternative and applies only if Petitioner's still pending motion for early termination were granted while this matter is pending, the Court will deny it for lack of ripeness.

[7] The Court will grant the Government's pending motion for leave to file this surreply.

## III.     DISCUSSION

Petitioner challenges his conviction under § 924(c), contending that the predicate VICAR offense,[8] murder in aid of racketeering, is not a crime of violence under § 924(c)'s force clause, 18 U.S.C. § 924(c)(3)(A). An offense under § 924(c) is made out when a defendant uses or carries a firearm in furtherance of a "crime of violence." 18 U.S.C. § 924(c)(1)(A). Under § 924(c), a crime is one of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another," (the "force clause") or "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(B). In Davis, the Supreme Court held that the residual clause of § 924(c)'s definition of "crime of violence" is "unconstitutionally vague." 139 S. Ct. at 2336. Therefore, after Davis, a § 924(c) conviction is valid only if the underlying "crime of violence" satisfies the "force clause."

Here, Petitioner's predicate crime of violence was the murder of Darmika Gray in violation of the laws of North Carolina in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). As such, whether Petitioner's § 924(c) conviction stands turns on whether commission of VICAR by committing murder under North Carolina law qualifies as a crime of violence under the force clause. Again, a crime is one of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another." Therefore, to satisfy

---

[8] The VICAR statute provides: "Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintain or increasing position in an enterprise engaged in racketeering activity, murders … in violation of the laws of any State or the United States, or attempts or conspires to do so, shall be punished – (1) for murder, by death or life imprisonment…" 18 U.S.C. § 1959(a)(1) (emphasis added).

7

the force clause, murder in aid of racketeering must have "has an element the use, attempted use, or threatened use of physical force against the person or property of another."

On this front, Petitioner contends that regardless of whether the "murder" alleged in Count 9, which is the § 924(c) predicate crime of violence, is defined under the generic definition of murder, the North Carolina definition of murder, or the federal definition of murder, "that offense fails to satisfy the force clause because any of those offenses can be established with proof of a *mens rea* that is less than intentional conduct, and proof of any of them only requires a showing of causation of death, not the use of physical force." [CV Doc. 19 at 2]. Petitioner continues that, in Borden, the Supreme Court held that an offense cannot qualify as a felony crime of violence under a force clause "if it requires only a *mens rea* of recklessness—a less culpable mental state than purpose of knowledge." [CV Doc. 19 at 3 (quoting Borden v. United States, 141 S.Ct. 1817, 1821-22 (2021))]. And, "[b]ecause the predicate offense of murder alleged in count 10 … could be established without proof of an intentional killing, it cannot qualify as a crime of violence under § 924(c)'s force clause." [CV Doc. 19 at 7].

In United States v. Mathis, 932 F.3d 242 (2019), the Fourth Circuit applied the categorical approach to determine whether the defendant's § 924(c) predicate offense VICAR in violation of 18 U.S.C. § 1959 by committing murder in aid of racketeering in violation of Virginia law, Virginia Code § 18.2-32, is a crime of violence. 932 F.3d at 264. In determining that the crime of first-degree murder under Virginia law qualifies categorically as a crime of violence under the force clause, the Fourth Circuit explained:

> [I]n United States v. Castleman, [the Supreme Court] held that "physical force is simply force exerted by and through" human action and that, therefore, a person need not "directly" touch his victim to exert "physical force." 572 U.S. 157, 170-71, 134 S.Ct. 1405, 188 L.E.2d 426 (2014) (citations and internal quotation marks omitted). Accordingly, so long as an offender's use of physical

8

> force, whether direct or indirect, could cause a violent result, the force used categorically is violent. (Citations omitted).
>
> A conviction for first-degree murder under Virginia law requires the "willful, deliberate, and premeditated" killing of another. Va. Code § 18.2-32. Murder "requires the use of force capable of causing physical pain or injury to another person" irrespective whether than force is exerted directly or indirectly by a defendant.

932 F.3d at 264-65.

The result is the same under North Carolina law. At the relevant time, murder under North Carolina's murder statute, N.C.G.S. § 14-17, was defined as it was at common law. See State v. Beale, 324 N.C. 87, 89 (1989). That is,

> [a] murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing … shall be deemed to be murder in the first degree…. All other kinds of murder … shall be deemed murder in the second degree.

N.C.G.S. § 14-17 (1992). As under Virginia law, "[f]irst-degree murder in North Carolina is the unlawful killing-with malice, premeditation and deliberation-of another human being." State v. Arrington, 336 N.C. 592, 419, 444 S.E.2d 418, 594 (1994) (citations omitted). Deliberation connotes a specific intent to kill the victim. See id. "North Carolina second-degree murder is 'the unlawful killing of a human being with malice but without premeditation and deliberation.'" United States v. Parrish, 767 Fed. App'x 440, 442 (4th Cir. 2019) (quoting State v. Thibodeaux, 352 N.C. 570, 532 S.E.2d 797, 806 (2000) (internal quotations omitted)). "The element of malice in second-degree murder is provided by intentional conduct, [and] a defendant need only intend to commit the underlying act that results in death." Parrish, 767 Fed. App'x at 442 (quoting State v. Coble, 351 N.C. 448, 527 S.E.2d 45, 48 (2000)). There need not be a specific intent to kill, but there must be intent to commit the act that results in death. Coble, 351 N.C. at 450. Moreover, mere recklessness does not satisfy the malice element of second-degree murder in North Carolina.

Rather, malice requires at least an "inherently dangerous act 'done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.'" State v. Arrington, 819 S.E.2d 329, 332 (2018) (quoting State v. Reynolds, 297 S.E.2d 532, 536 (1982)).

Here, Count Nine of the Information does not specify whether the VICAR offense was based on first or second-degree murder. Rather it charges Petitioner with "unlawfully and knowingly" murdering Darmika Gray in violation of the laws of North Carolina. [See CR Doc. 3-1 at 5]. The Court must assume here, where it is not clear from the charging instrument, that Petitioner's VICAR offense was based on second-degree murder, despite the likelihood that it was based on first-degree murder. The result is the same regardless.

As noted, "so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used is categorically violent." Mathis, 932 F.3d at 265. Moreover, "unlawfully killing another human being requires the use of force capable of causing physical pain or injury to another person." In re Irby, 858 F.3d 231, 235 (4th Cir. 2017) (internal quotation marks omitted). "Force," as used in § 924(c)'s "force clause," means "a substantial degree of force" that is "capable of causing physical pain or injury to another person." United States v. Evans, 848 F.3d 242, 245 (4th Cir. 2017). As such, it only follows that the use of force incident to second-degree murder in North Carolina, regardless of whether the defendant intends to kill the victim, is violent. Therefore, murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), based on North Carolina second-degree murder, is a crime of violence for purposes of § 924(c). McDonald v. United States, 3:20-cv-307-MOC, 2021 WL 96465 (W.D.N.C. Jan. 1, 2021); Ordonez-Vega v. United States, 3:19-cv-00579-RJC, 2020 WL 7212582 (W.D.N.C. Dec. 7, 2020).

Borden does not change this result. In Borden, the plurality concluded that a criminal offense with a *mens rea* of recklessness does not qualify as a "violent felony" under the ACCA's elements clause. 141 S.Ct. at 1823-24. The Court reasoned as follows. An offense qualifies as a violent felony under the ACCA's elements clause if it "has an element the use, attempted use, or threatened use of physical force against the person of another." 141 S.Ct. at 1822 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). To decide whether an offense satisfies the elements clause, the Court asked whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." Id. "If any —even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." Id. (citation omitted). For the petitioner in Borden, one of the three predicate convictions for application of the ACCA was for reckless aggravated assault in violation of Tennessee law. Id. The relevant statute defined that crime as "[r]ecklessly commit[ing] an assault" and either "caus[ing] serious bodily injury to another" or "us[ing] or display[ing] a deadly weapon." Id. (citing Tenn. Code Ann. § 39-13-102(a)(2)(2003)). The petitioner argued that this offense "is not a violent felony under ACCA's elements clause because a mental state of recklessness suffices for conviction." Id.

The plurality reasoned that "[t]he dispute turns on the definition of 'violent felony' in ACCA's elements clause—more specifically, on how different mental states map onto the clause's demand that an offense entail the 'use … of physical force against the person of another.'" Id. at 1823 (citations omitted). In resolving the question, the plurality set out four states of mind that may give rise to criminal liability "in descending order of culpability: purpose, knowledge, recklessness, and negligence." Id. at 1823. The plurality provided that, "[a] person who injures

11

Case 3:92-cr-00238-FDW   Document 60   Filed 09/07/21   Page 11 of 14

another knowingly, even though not affirmatively wanting the result, still makes a deliberate choice of consequent harm." Id. (citation omitted). A person acts recklessly, on the other hand, when "he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." Id. (quoting Model Penal Code § 2.02(2)(c)). In deciding that the ACCA's elements clause's definition of "violent felony" does not include offenses that criminalize reckless conduct, the plurality concluded, "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." Id. at 1825.

Second-degree murder in North Carolina requires that the defendant act with malice, or the intent to commit the act that results in death. Malice requires, at least, an "inherently dangerous act 'done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.'" State v. Arrington, 819 S.E.2d 329, 332 (2018) (quoting State v. Reynolds, 297 S.E.2d 532, 536 (1982)). This standard is readily distinguishable from that at issue in Borden, which defined the offense of reckless aggravated assault as "recklessly committing an assault" and either "causing serious bodily injury to another" or "using or displaying a deadly weapon." See Borden, 141 S.Ct. at 1822. This reckless aggravated assault offense fit squarely within the simple "reckless" state of mind where one "consciously disregards a substantial and unjustifiable risk" attached to his conduct. Id. at 1824. The extreme recklessness incident to the commission of second-degree murder in North Carolina is more. To be sure, the malice element is more consistent with Borden's description of "knowing" conduct; that is, a person acts "knowingly" when "he is aware that a result is practically certain to follow from his conduct, whatever his affirmative desire." Id. at 1823 (internal quotation mark and citation omitted). To read Borden to disqualify North Carolina second-degree murder as a

12

crime of violence would expand Borden beyond its plain holding. As such, Petitioner's § 924(c) predicate offense, murder in aid of racketeering, is a crime of violence and his § 924(c) conviction stands.[9] The Court will, therefore, deny and dismiss his § 2255 motion to vacate.[10]

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 motion to vacate and alternative petition for writ of coram nobis and grants the Government's motion for leave to file a surreply.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and Petitioner's Alternative Petition for Writ of Coram Nobis [Doc. 19] are **DENIED** and **DISMISSED**.

2. The Government's Unopposed Motion for Leave to File Surreply [Doc. 20] is **GRANTED**.

3. The Clerk is respectfully instructed to update the docket in this matter in accordance with the caption above.

---

[9] Because Petitioner's § 2255 motion can be resolved on the merits, the Court declines to address the Government's arguments that Petitioner waived the right to contest his conviction and is procedurally barred from raising the issue decided here.

[10] The Court is aware of the Fourth Circuit's recent decision in United States v. Keene, 955 F.3d 391 (2020). The impact of Keene is unclear. See, e.g., In re Thomas, 988 F.3d 783, 791 (4th Cir. 2021); Thomas v. United States, 2:11-cr-58, 2021 WL 3493493 (E.D. Va. Aug. 9, 2021). If anything, Keene may slightly broaden the circumstances under which a defendant may be prosecuted under the VICAR statute, 18 U.S.C. § 1959. In renouncing the categorical approach to determining whether a defendant's alleged conduct in assaulting victims with a dangerous weapon in violation of Virginia's brandishing statute constituted predicate assault with a dangerous weapon under the VICAR statute, the Fourth Circuit held that "[t]he VICAR statute includes no language suggesting that *all* violations of a state law must qualify as the enumerated federal offense." 955 F.3d at 397. In other words, the two need not be "a categorical 'match.'" Id. at 398.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 3, 2021

Frank D. Whitney
United States District Judge